**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

MILAGROS BAEZ *
       Plaintiff *

v. * **Civil No. 07-1646 (SEC)**

COMMISSIONER OF SOCIAL *
SECURITY *
       Defendant *
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**OPINION AND ORDER**

    This is an action brought under 42 U.S.C. § 405(g), the "Social Security Act." Plaintiff seeks review of the Commissioner of Social Security's ("the Commissioner") denial of social security benefits (Docket # 1). The Commissioner of the Social Security Administration ("SSA") filed a Memorandum of Law in support of the decision to deny benefits (Docket # 7), and Plaintiff filed her own Memorandum of Law (Docket # 6). After reviewing the parties' filings and the applicable law, the Commissioner's decision to deny Plaintiff disability benefits will be **REVERSED**, and this case will be **REMANDED** for further proceedings consistent with this opinion.

    **Standard of Review**

    The scope of our judicial review of a Commissioner's final decision is limited both by statute and case law. See 42 U.S.C. §405(g). Section 405(g) provides that the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." In Richardson v. Perales, 402 U.S. 389 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938)), the United States Supreme Court defined "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401; see also Tsarelka v. Secretary of H.H.S., 842 F. 2d 529, 534 (1st Cir. 1987). Moreover, the First Circuit has held that this determination of substantiality must be made on the record as a whole. See Ortiz v. Secretary of H.H.S., 955 F.2d 765, 769 (1st Cir. 1991). Furthermore, written reports submitted by non-

**Civil No. 07-1646 (SEC)**                                                                                                           2

examining physicians who merely reviewed the written medical evidence are not substantial evidence, although these may serve as supplementary evidence for the Administrative Law Judge ("ALJ") to consider in conjunction with the examining physician's reports. Irrizary v. Commissioner of Social Security, 253 F. Supp. 2d 216, 218 (D.P.R. 2003). Lastly, "it is the Secretary's responsibility to choose between conflicting evidence." Burgos López v. Secretary of H.H.S., 747 F.2d, 37, 41 (1st Cir. 1984); see also Tremblay v. Secretary of H.H.S., 676 F. 2d 11, 12 (1st Cir. 1982).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146-47, n.5 (1987). It is well settled law that a claimant is disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(a). In making this determination, the ALJ employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520; see, e.g., Goodermote v. S.H.H.S., 690 F.2d 5, 6-7 (1st Cir. 1982).

The five-step inquiry made by the ALJ in determining whether a claimant is disabled is as follows. First, the ALJ asks: is the claimant currently employed? If so, she is not disabled; if she is not, then the ALJ must turn to the second question: does the claimant have a severe impairment (one which significantly limits his ability to perform work-related functions)? If not, then she is not disabled; if so, the ALJ must ask: does the claimant have an impairment equivalent to those contained in the regulations' Appendix I? If so, then she

**Civil No. 07-1646 (SEC)**                                                                 3

is automatically rendered disabled. If not, then the ALJ must determine if the claimant's impairment prevents her from performing work that he has done in the past. If the ALJ determines that the claimant cannot perform her past work, then he must determine if claimant's impairment will prevent him from performing other work of the sort found in the national economy. If the claimant cannot perform any such work, she is disabled. If she is capable of performing work available in the economy, then she is not disabled under the Social Security standards. See Goodermore, 690 F. 2d at 6-7.

As stated above, the burden is on the claimant to establish that he is disabled, and unable to return to his past work. Id. at 7. However, if the claimant meets this burden, then it is the Secretary's burden to show that there are other jobs in the national economy that the claimant can perform, notwithstanding his disability. Id.; see also, Torres v. Secretary of H. H. S., 677 F. 2d 167, 168 (1st Cir. 1982); González-Alemán v. Secretary of H.H.S., 86 F. 3d 1146, 1996 U.S. App. LEXIS 11655 (1st Cir. 1996). In satisfying this burden, the Secretary may rely on a set of rules, referred to as Grids, which are basically a matrix "combining different permutations of the four essential factors set out in the statute (age, education, work, experience, and residual work capacity) and stating, as to each combination, whether a claimant with those characteristics is disabled or not disabled." Vázquez v. Secretary of H.H.S., 683 F. 2d 1, 2 (1st Cir. 1982).

Where a claimant has only strength limitations, that is, exertional limitations, the ALJ may rely on the Grids to meet the burden of determining that there are jobs available for the claimant in the national economy which he can perform. González-Alemán, 1996 U.S. App. LEXIS 11655 at * 2. However, if the claimant has non-exertional impairments, the Grid may not accurately reflect the availability of suitable jobs. Id. That is, considering that the Grid is based on a claimant's exertional capacities, "it can only be applied when a claimant's non-exertional limitations do not significantly impair claimant's ability to perform at a given exertional level." Rivera-Rivera v. Barnhart, 330 F. Supp. 2d 35, 37 (D.P.R. 2004)(Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994)). Therefore, in cases "where a nonexertional

**Civil No. 07-1646 (SEC)**                                                                                                   4

impairment significantly affects claimant's ability to perform the full range of jobs he is otherwise exertionally capable of performing, the Secretary must carry his burden of proving the availability of jobs in the national economy by other means, typically through the use of a vocational expert." Miranda-Monserrate v. Barnhart, 520 F. Supp. 2d 318, 325 (D. P. R. 2007)(internal citations omitted). However, "should a non-exertional restriction be found to impose no significant limitation on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate." Rivera-Rivera, 330 F. Supp. 2d at 37-38.

In considering whether a claimant's residual work capacity is reduced by non-exertional limitations (i.e. a mental impairment), the Secretary must assess the claimant's mental capability for unskilled work, and his ability to cope with the demands of any work environment. See Miranda-Monserrate, 520 F.Supp. 2d at 326; Irlanda v. Secretary of H.H.S., 955 F. 2d 765, 769-770 (1st Cir. 1991). The first inquiry focuses on whether a claimant is able to understand, remember, and carry out simple instructions, respond appropriately to the normal work environment, and to deal with the changes in a routine work situation. Id. The second inquiry requires determining whether a claimant can be punctual, attend work on a regular basis, accept supervision, and remain in the work place for an entire day. Id. at 326.

Finally, an ALJ is a lay fact finder that lacks the expertise to make a medical conclusion, and, as such, "he cannot interpret raw, technical medical data." Irrizary, 253 F. Supp. 2d at 219 (citing Rivera-Torres v. Secretary of H. H. S., 837 F. 2d 4, 7 (1st Cir. 1988); Berríos v. Secretary of H. H. S., 796 F. 2d 574, 576 (1st Cir. 1986)).

**Factual and Procedural Background**

Ms. Baez was born in 1955, she has a fifth grade education, and work experience as a janitor, cafeteria employee, and nurse's aide. Ms. Baez alleges to have stopped working at her janitorial position with the Municipality of Yabucoa on June 30, 2002, due to her poor health. She suffers from a variety of medical conditions including asthma, circulation problems, arthritis, back pain, which impedes her from lifting her arms, and kidney

**Civil No. 07-1646 (SEC)** 5

afflictions. Docket # 6 at 4. Baez filed for disability benefits with the SSA on October 8, 2003, but she was denied, first on January 28, 2004, and upon reconsideration on November, 3 of that same year. T.R. at 14. A hearing was then held before an ALJ, who found that claimant was not disabled. Her request for review before the Appeals Council was also denied. Notwithstanding, this Court notes that Claimant filed a second application with the SSA, which led to a declaration of disability. See Docket # 8. The SSA found Claimant to have become disabled on February 21, 2007, and awarded her benefits beginning 12 months before. Id.

On August 16, 2006, the ALR entered an order declaring that "[b]ased on the application for a period of disability and disability insurance benefits filed on October 8, 2003, the claimant is not disabled . . ." T.R. at 22. The ALJ concluded that Claimant suffered from severe impairments stemming from an affective disorder and back problems. T.R. at 16. Furthermore, the decision stated that Claimant was not involved in gainful activity, and was unable to return to her previous past relevant work under 20 CFR 404.1565, which included jobs as a cook and a janitor. T.R. at 17 & 21. Despite recognizing Claimant's disabilities, the ALJ found her to possess the residual capacity to perform unskilled medium light work,[1] for which a significant number of jobs are available in the national economy. T.R. at 21.

The ALJ followed the five step inquiry into Plaintiff's application for benefits. As mentioned above, he found that Plaintiff was incapable of performing her past work, but that she had the residual functional capacity ("RFC") to do light work. See Tr. 15-21. This contrasted with the opinion of Claimant's treating physician, who concluded that she suffered

---

[1] "After consideration of the entire record, I find that the claimant has the residual functional capacity for lifting and/or carrying 50 ponds occasionally, and frequently 25 pounds; she can sit/stand/walk for six hours in an eight hour workday; she is not limited in pushing and pulling; she can occasionally climb, stoop, and crawl; she should avoid concentrated exposure to extreme cold and heat, and wetness and humidity; and, she should avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation. From te mental standpoint, the claimant can learn, understand, remember, and execute simple, but not detailed or complex instructions; can sustained pace and attention, and activity without special supervision; and, can interact with the public, coworkers, and supervisors; and can adjust to changes in work routines and environments." T.R. at 17.

**Civil No. 07-1646 (SEC)**                                                                                          6

from severe major depression, and that she was unable to work given her poor prognosis. The ALJ did not give weight to his conclusion, in part, because he did not ". . . [recommend] or place[] Claimant in a hospital or a sheltered or highly supported living environment." T.R. at 20. Due to this, and based on the State Agency's evaluation, and his own observations during the hearing, the ALR concluded "Claimant is an alert, fully oriented, logical, and coherent person, with preserved memory, preserved ability to provide information, and preserved capacity to described her symptoms." Id. Accordingly, the ALJ concluded that, in view of Plaintiff's RFC, her age, education, and skills, the Medical Vocational Guidelines (a/k/a Grid) mandated a not disabled determination. T.R. at 21; see also 20 CFR § 404, Subpart P., App. 2. This Court notes that in applying the Guidelines, the ALJ did not consider the non-exertional limitations alleged by Plaintiff.

### Applicable Law and Analysis

Claimant alleges the following specific errors of law committed by the ALJ: 1) ". . .[he] did not consider the nature and extent of the limitations arising from plaintiff's medical conditions"; 2) "[he] did not make a proper Residual Functional Capacity ("RFC") analysis based on a physician's evaluation"; 3) "[he] did not give proper weight to the treating physician's medical reports . . ."; 4) [he] did not give proper weight to the testimony of the plaintiff." Docket # 6 at 3-4. Because this Court finds that Claimant's arguments are intertwined, they will be discussed together.

Claimant alleges that the ALJ did not give proper weight to her treating physicians' reports. For example, the ALJ discredited claimant's treating psychiatrist, Dr. Jaime Marchena ("Dr. Marchena"), who had evaluated patient on at least 18 occasions, because he concluded she suffered from "severe, recurrent major depressive disorder," but did not give specific scientific factors to substantiate his conclusions.[2] T.R. at 18 & 290.

---

[2] Dr. Marchena stated that, "[d]uring the evaluation and the follow-up visits patient, shows and is unable to interact properly with others and maintains poor social interaction with personal co-workers." T.R. at 480.

**Civil No. 07-1646 (SEC)**                                                                                              7

Nevertheless, Dr. Marchena listed the battery of medicines prescribed to Claimant, including Depakote, Navane, Temazepan, and Norrithyline, and based his opinion on her extensive treatment history. T.R. at 288. Another psychiatrist, Dr. Llona Sanchez ("Dr. Llona"), found Claimant to suffer from uncontrolled bipolar affective disorder, and to be unqualified to handle her funds. T.R. at 321.

The ALR judge disregarded Claimant's treating psychiatrist's conclusion of severe depression. The focus of the ALR's criticism is on another psychiatrist's observation that she did not suffer from deliriums or hallucinations. However, Dr. Marchena's conclusions were not based on said symptoms. Nevertheless, the ALJ gave greater weight to the State Agency's evaluators, who found that Claimant had only moderate limitations. T.R. at 19. Furthermore, the ALJ discredited Dr. Marchena's conclusions, stating that they "do not seem to be a true reflection of the claimant's functioning." T.R. at 20. His basis for this was his personal observation of Claimant, and that "Dr. Marchena has not recommended or placed claimant in a hospital or a sheltered or highly supported living environment." Id. This Court finds that there is no evidence, scientific or otherwise, that said actions would have been appropriate, taking as true Mr. Marchena's finding Claimant as disabled, especially in light of the fact that the record shows that she receives significant help and support from her sister and daughter. Furthermore, Plaintiff gave extensive testimony as to the support and help her family provides in her daily routine. T.R. at 495-499. The ALJ did not give credence to this testimony.

Beyond the controversy regarding Claimant's mental health, the ALJ disregarded Claimants allegations regarding pain. He states to have not observed "the overt symtomatology typical of disabling pain," while he also considered the medication prescribed to her and the frequency of her medical visits. T.R. at 19. In holding that her pain was not disabling he, ". . . found that heavy lifting or carrying may worsen her condition, but otherwise she should function adequately." Id. No record citations, or specific medical conclusions were proffered to substantiate this conclusion. Furthermore, another of

**Civil No. 07-1646 (SEC)** 8

Claimant's treating physicians, Dr. Jorge Corretjer, concluded that "claimant cannot engage in work activities." T.R. at 17.

However, more weight was given to the consulting physician, Dr. Alan Rapaport's ("Dr. Rapaport") evaluation, which did not have significant conclusions regarding disability.[3] Nevertheless, Dr. Rapaport did find that Claimant could only carry light objects. Id. Accordingly, once again the ALJ gave greater weight to the State Agency's doctors' conclusion that Claimant had a residual functional capacity for medium work, and could sit stand or walk for six hours a day. T.R. at 18

From the above, this Court finds that, especially in the case of Claimant's mental state, the ALJ erred in substituting Claimant's treating physicians' medical opinions with his layman opinion, and in disregarding Plaintiff's medical record and her testimony during the hearing so lightly.

When a claimant has met the initial burden, as Plaintiff did here, of establishing that she cannot return to her previous work, the burden of proof shifts to the Secretary to prove that there are sufficient numbers of jobs in the national economy that the claimant can perform. Gonzalez-Aleman v. Secretary of HHS, No. 95-2168, 1996 U.S. App. LEXIS 11655, *2 (1st Cir. 1996). Although the Secretary may usually meet this burden by placing the claimant within one of the subcategories contained in the social security regulations ("the Grids"), "where a claimant has non-exertional impairments, the Grid may not accurately reflect the availability of suitable jobs." Id. at * 4. In these circumstances, the testimony of a vocational expert should be procured. Id.; see also, Padilla v. Barnhart, Commissioner of the H.H.S., 186 Fed. Appx. 19, 2006 WL 2008108, * 2 (unpublished)(finding that "[e]xclusive reliance on the Grid is not appropriate in mixed exertional/non-exertional cases"); Vázquez-Rosario v. Barnhart, Commissioner of H. H. S., 149 Fed. Appx. 8, 2005

---

[3] In fact, Dr. Rappaport diagnosed Claimant with: 1) massive obesity, 2) mild hypertension, 3) chronic depression, 4) low back syndrome, 5) perennial asthma, 6) hirsutism, and 7) illiteracy. T.R. at 323.

**Civil No. 07-1646 (SEC)**                                                                                                          9

WL 2435747, * 2 (unpublished)(same). The reason behind procuring vocational evidence is that the fact that a claimant can, according to the Grids, technically perform a particular level of work, does not automatically mean that she can function in the workplace. See <u>Wingo v. Bowen, Secretary of H.H.S.</u>, 852 F. 2d 827, 831 (5th Cir. 1988). An ALJ must consider the aggregate impact of all of a claimant's ailments. <u>Id.</u>

In light of the above, the ALJ should have procured the evidence of a vocational expert to determine whether Plaintiff's RFC was further diminished by Plaintiff's non-exertional (not related to strength) limitations, i.e., her depression, and overall mental condition. After reviewing the record, this Court finds that there could be legitimate room for interpretation in terms of the severity of Claimant's mental health conditions. However, all of the treating doctors agreed she did suffer from persistent depression. Due to this fact, regardless of whether or not the depression was totally disabling or not, the circumstances warranted the use of a vocational expert, and greater ponderance of Claimant's actual ability to perform in a workplace environment. Furthermore, this Court understands that her back pain should have also been factored in to the ALJ's interpretation of the Grid. <u>Nguyen v. Chater</u>, 172 F.3d 31, 36 (1st Cir. Mass. 1999)(holding "[p]ain can constitute a significant non-exertional impairment which precludes naked application of the Grid and requires use of a vocational expert.")

Moreover, as stated above, when a claimant has exertional, plus non-exertional impairments, the Secretary must assess the claimant's mental capability for unskilled work, and his ability to cope with the demands of any work environment. See <u>Irlanda-Ortíz</u>, 955 F. 2d at 769-770. The first inquiry focuses on whether a claimant is able to understand, remember, and carry out simple instructions, respond appropriately to the normal work environment, and to deal with the changes in a routine work situation. <u>Id.</u> The second inquiry requires determining whether a claimant can be punctual, attend work on a regular basis, accept supervision, and remain in the work place for an entire day. <u>Id.</u> at 770. This Court finds no substantial evidence in the record to support a finding that Plaintiff was able to

**Civil No. 07-1646 (SEC)** 10

consistently perform in the workplace. To the contrary, the record shows, on numerous occasions, that Plaintiff was unable to cope with simple daily situations, was unable to do virtually any house chores, and suffered from persistent depression, which her treating physicians cataloged as severe.

Furthermore, the ALJ also erred in his reasoning with regards to Dr. Marchena, and thus minimized, in a manner tantamount to total disregard, the doctor's conclusion that Claimant was unable to work. An ALJ must give considerable weight to treating physician's opinions in determining disability, and may only disregard these with a showing of good cause, namely: (1) that they are brief and conclusory, (2) not supported by medically acceptable clinical laboratory diagnostic techniques, or (3) are otherwise unsupported by the record. See Sánchez v. Commissioner of Social Security, 270 F. Supp. 2d 218, 221 (D.P.R. 2003). The ALJ's conclusion that Plaintiff's mental condition was not as severe as alleged is not supported by the record.

As such, the ALJ's decision is hereby **REVERSED,** and this case is **REMANDED** for further proceedings consistent with this opinion. This Court does not encourage the ALJ to make a finding of disability. The ALJ must, however, further investigate, through vocational expert testimony, the extent to which Plaintiff's mental condition might have impacted her ability to function in the workplace between 2003 and 2007, when she was declared disabled.

**SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of March, 2009.

S/ *Salvador E. Casellas*/as
SALVADOR E. CASELLAS
U.S. Senior District Judge